606 F.2d 417
 1979 O.S.H.D. (CCH) P 23,796
 WESTMORELAND COAL COMPANY, Petitioner-Appellant,
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, Respondent-Appellee,
and
Ray Marshall, Secretary of Labor, United States Department
of Labor, Intervenor-Respondent-Appellee.
 No. 78-1322.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 8, 1979.
Decided Aug. 22, 1979.
 
 Charles Q. Gage and C. Lynch Christian, III, Charleston, W. Va. (T. Randolph Cox, Jr., Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on brief), for petitioner-appellant.
 Ronald E. Meisberg, Atty., U. S. Dept. of Labor, Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Morell E. Mullins, Associate Sol., Thomas A. Mascolino, Counsel, Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., on brief), for respondent-appellee and intervenor-respondent-appellee.
 Before HAYNSWORTH, Chief Judge, BUTZNER, Circuit Judge, and HOFFMAN*, Senior District Judge.
 PER CURIAM:
 
 
 1
 This is an appeal from a final decision of the Federal Mine Safety and Health Review Commission.[1] The decision upheld a Mine Safety and Health Administration (MSHA) order of withdrawal, directed to petitioner's Hampton No. 4 Mine. The order was issued pursuant to the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C.A. §§ 801 Et seq.[2] The Act at the time of the order stated in pertinent part:
 
 
 2
 (a) If, upon any inspection of a coal mine, an authorized representative of the Secretary finds that an imminent danger exists, such representative shall determine the area throughout which such danger exists, and thereupon shall issue forthwith an order requiring the operator of the mine or his agent to cause immediately all persons, except those referred to in subsection (d) of this section, to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such imminent danger no longer exists. 30 U.S.C.A. § 814(a).[3]
 
 
 3
 The facts which gave rise to the withdrawal order and the alleged "imminent danger" are as follows. Petitioner Westmoreland owns the Hampton No. 4 Mine which, until the issuance of the withdrawal order, was an active mine. That mine is adjacent to the Guyan No. 5 Mine, formerly operated by the Island Creek Coal Company, but now abandoned. The condition and strength of the barrier pillar which separated the two mines is the central question involved in this petition for review. The Guyan No. 5 Mine has filled with water and if the barrier pillar is not sufficiently strong, it will be breached and the Hampton No. 4 Mine will flood. This is the situation which the MSHA's withdrawal order states is the imminent danger.
 
 
 4
 The barrier pillar in question is inaccessible because of retreat mining. This is a procedure in which the supporting pillars of coal in a mine are mined out after the coal mining operation has proceeded as far as was planned. After the support pillars are removed the roof is allowed to cave in. Therefore, in reaching his conclusion about the existence of an imminent danger at the Hampton No. 4 Mine, the Administrative Law Judge (ALJ) was dependent on expert opinion concerning the condition of the barrier pillar. The principal expert witnesses were Dr. Wu for the MSHA and Dean Holland for Westmoreland.[4]
 
 
 5
 Dr. Wu concluded that the barrier pillar was not strong enough to withstand the force of water built up in the adjacent Guyan No. 5 Mine. Dr. Wu based his conclusion on his calculations using accepted engineering formulas. He testified that these calculations showed that the retreat mining had caused additional force to be exerted on the barrier pillar and as a result the pillar was in a crushed or fractured state. He also based his conclusion on what he considered to be evidence of bridging. Bridging occurs when an elastic layer of a geological formation spreads out and places the weight of the layers above it at the ends of the bridging layer. The only evidence of bridging in this case was one core sample taken from the geological formation above the mine. Dr. Wu testified that this core showed a 53 foot layer of sandstone and shale which he concluded had bridged, thus removing a great deal of the force of the overburden (the earth above the barrier pillar) holding the barrier pillar in place. Dr. Wu supported his conclusion by referring to reference works in geology. Based on his engineering calculations and his conclusion that bridging had occurred, Dr. Wu ran tests on coal from the Hampton No. 4 Mine which he testified, showed that the barrier pillar was unable to withstand the force of water in the adjacent mine.
 
 
 6
 Dean Holland did not agree with Dr. Wu. He testified that his calculations showed that the barrier pillar would not have been crushed by retreat mining. In making his calculations, Dean Holland used his own formula, a version of which is an accepted engineering formula. He also concluded that bridging had not occurred, however, he offered no additional core samples and failed to cite any authoritative reference works to support his conclusion. Dean Holland concluded that the barrier pillar was strong enough to withstand the force exerted by the water in the adjacent mine.
 
 
 7
 The ALJ found Dr. Wu's testimony to be more persuasive than Dean Holland's, and upheld the withdrawal order issued by the MSHA. Westmoreland has petitioned for review of this decision.
 
 
 8
 We have reviewed the record in this case and the evidence, taken as a whole, particularly the testimony of Dr. Wu, Dean Holland, Dr. Esmer, the United Mine Workers of America's witnesses[5] and the engineering manuals and professional articles placed into evidence, support the decision of the ALJ. Dr. Wu's testimony was based on published and accepted engineering formulas, each of which could be applied to the situation existing at the Hampton No. 4 Mine. Dean Holland's testimony was based on an unpublished and accepted formula for constructing mine barrier pillars. His formula is best suited to situations in which first hand information can be gathered about the pillar in question.
 
 
 9
 Furthermore, part of the testimony of petitioner's witness, Dr. Esmer, contradicts the testimony of Dean Holland concerning the factor of safety calculations for the barrier pillar. The testimony of the U.M.W.A. witnesses supported applicable portions of Dr. Wu's testimony.
 
 
 10
 Finally, Dean Holland did not testify that the formulas used by Dr. Wu were incorrect; he did testify that he believed they were too conservative.[6] The purpose of the Federal Coal Mine Health and Safety Act is to protect the safety of the miner. The language of the statute, the Congressional history of the statute, and the judicial review have all established that this legislation is to be interpreted liberally to effect that purpose. It is clearly consistent with the intent of Congress to be conservative in assuming safety. See, District 6, U.M.W. v. Interior Board of Mine Operations Appeals, 183 U.S.App.D.C. 312, 562 F.2d 1260, 1267 (D.C.Cir. 1977).
 
 
 11
 Although we conclude that the findings of the ALJ are supported by substantial evidence on the record considered as a whole and we affirm his decision, we remand the case to the Commission for the following reasons. At oral argument of this case, counsel for the respondents agreed with the petitioner that because the water level in the adjacent mine has been at a maximum level for over a year, and the barrier pillar is still intact, the reasonableness of the ALJ's findings may be contradicted by additional evidence concerning the pillar. Such evidence could include additional core drilling samples of the geological formation above the pillar which was not taken at the time of the administrative proceeding due to constraints of time. Furthermore, Westmoreland has also appealed the ALJ's denial of its motion to amend the transcript; the respondents' brief did not respond to this argument. On remand Westmoreland will be able to amend the transcript of the administrative hearing.
 
 
 12
 For the above reasons, we affirm the decision of the ALJ upholding the MSHA's withdrawal order and remand, pursuant to 30 U.S.C.A. § 816(a)(1) (Supp.1978),[7] to allow the parties to present additional evidence concerning the condition of the barrier pillar at its Hampton No. 4 Mine to the Commission. The parties shall have 90 days from the date of this decision to present additional evidence to the Commission.
 
 
 13
 AFFIRMED BUT REMANDED FOR FURTHER PROCEEDINGS.
 
 
 
 *
 The Honorable Walter E. Hoffman, Senior United States District Judge, sitting by designation
 
 
 [1]
 At the time of the Petitioner's appeal from the decision of the Administrative Law Judge no Commission had been appointed. Pursuant to 30 U.S.C.A. § 823(d)(1) (Supp.1978) the decision of the ALJ became that of the Commission
 
 
 [2]
 Subsequent to the issuance of the MSHA's withdrawal order the Act was amended, 30 U.S.C.A. §§ 801 Et seq. (Supp.1978). The Act is now administered under the Department of Labor, rather than the Department of the Interior. None of the amendments affect this case
 
 
 [3]
 The amended section states:
 § 817. Procedures to counteract dangerous conditions Withdrawal orders
 (a) If, upon any inspection or investigation of a coal or other mine which is subject to this chapter, an authorized representative of the Secretary finds that an imminent danger exists, such representative shall determine the extent of the area of such mine throughout which the danger exists, and issue an order requiring the operator of such mine to cause all persons, except those referred to in section 814(c) of this title, to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such imminent danger and the conditions or practices which caused such imminent danger no longer exist. The issuance of an order under this subsection shall not preclude the issuance of a citation under section 814 of this title or the proposing of a penalty under section 820 of this title.
 30 U.S.C.A. § 817(a) (Supp.1978).
 
 
 [4]
 Westmoreland also presented expert testimony from a Dr. Esmer. However, his testimony concerned tests he performed for Dean Holland and was not significant by itself
 
 
 [5]
 The U.M.W.A. was a party in this case at the administrative level
 
 
 [6]
 The ALJ's decision correctly notes that Dean Holland's criticism of Dr. Wu's use of the Dean's formula was due to a misunderstanding. The Dean believed that Dr. Wu was using the formula to determine whether or not the pillar could withstand the force of the water in the adjacent mine. Dr. Wu, however, was using the formula to determine the condition of the pillar after retreat mining had occurred. The ALJ is correct in stating that the Dean "did not challenge Dr. Wu's computations under the various formulas, including Dean Holland's own published formula. . . ."
 
 
 [7]
 30 U.S.C.A. § 816(a)(1) (Supp.1978) states in pertinent part:
 If any party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Commission, the court may order such additional evidence to be taken before the Commission and to be made a part of the record. The Commission may modify its findings as to the facts, or make new findings, by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. The Commission may modify or set aside its original order by reason of such modified or new findings of fact.